**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. CASE NO.   21-CR-60266-KMM**

**UNITED STATES OF AMERICA,**

**vs.**

**MICHAEL WILLIS,**

**DEFENDANT.**

_____/

**FACTUAL PROFFER**

The United States of America and **MICHAEL WILLIS** ("Defendant"), hereby agree that, had this case proceeded to trial, the United States would have proven beyond a reasonable doubt the following facts, which occurred in Broward County, in the Southern District of Florida and elsewhere:

1.      On or about August 3, 2021, the DEA conducted a buy/walk operation from Willis utilizing an undercover ("UC") Broward County Sheriff's Office ("BSO") Detective. During the operation, Willis delivered to the BSO UC what was represented to be fifty-six (56) grams of methamphetamine in exchange for $800.00, and what was represented to be fifty-six (56) grams of fentanyl for $3,000.00 at in Pompano Beach, Broward County, Florida.

2.      During recorded conversation leading up to the transaction between the UC and Willis, Willis informed the UC that an ounce of fentanyl typically was selling on the street for between $1,600.00 and $2,000.00.   Willis stated that he would sell the UC two (2) ounces for $3,000.00. Willis informed the UC that the fentanyl in his possession was very potent, and he typically sold to street level dealers who "cut" the fentanyl to dilute its potency. Willis described the fentanyl as "deathly" strong and advised the UC to be very careful. The UC asked if Willis had

"tina" referring to methamphetamine. Willis informed the UC that he would sell him two ounces for $800.00.   Willis and the UC agreed to meet later in the day at 2320 North Federal Highway, Pompano Beach, Broward County, Florida.

3.    At approximately 6:57 P.M., a black Acura MDX bearing Florida tag QIEL46 arrived at the location for the meeting.   The vehicle circled the business before parking in the area of the UC vehicle. Shortly after, Willis exited the vehicle and entered the passenger seat of the UC vehicle.   Inside of the UC's vehicle, the UC paid Willis a total of $3,800.00 for what Willis represented was fifty-six (56) grams of fentanyl and fifty-six (56) grams of methamphetamine. The UC and Willis discussed the quality of the methamphetamine and fentanyl, during which Willis reiterated that the fentanyl was responsible for overdoses.   Willis and the UC discussed future transactions.   The meeting was audio/video recorded.

4.    A DEA forensic chemist later determined that the two substances sold by Willis to the UC for $3,800.00 were 56.4 grams of fentanyl and 57.32 grams of 98% pure methamphetamine or Ice.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
*s/ Francis Viamontes*

Date: _11/16/2021_    By: _____

FRANCIS VIAMONTES
ASSISTANT UNITED STATES ATTORNEY
*s/ Huda Ajlani Macri*

Date: _11/16/2021_    By: _____

HUDA AJLANI-MACRI
ATTORNEY FOR DEFENDANT
*s/ HAM for Michael Willis*

Date: _11/16/2021_    By: _____

MICHAEL WILLIS
DEFENDANT